UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA N. o/b/o N.N.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06601 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Tina N. ("Plaintiff") brings this action on behalf of N.N., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 22; Dkt. 23), and Plaintiff's reply (Dkt. 24). For the reasons discussed below, Plaintiff's motion (Dkt. 22) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 23) is denied.

## BACKGROUND

On January 11, 2017, Plaintiff protectively filed an application for SSI on behalf of N.N., a child under the age of 18. (Dkt. 19 at 46, 93).[1] Plaintiff alleged N.N.'s disability began on January 1, 2017. (*Id.* at 46, 171). Plaintiff's application was initially denied on March 31, 2017. (*Id.* at 46, 94). On March 5, 2019, Plaintiff and N.N. appeared at a hearing in Rochester, New York, before administrative law judge ("ALJ") Michael Devlin. (*Id.* at 66-84). On May 6, 2019, the ALJ issued an unfavorable decision. (*Id.* at 43-63). Plaintiff requested Appeals Council review, and her request was denied on June 15, 2020, making the ALJ's decision the Commissioner's final determination. (*Id*. at 5-11). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id.* (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id*. (internal quotations and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether N.N. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that N.N. was a school-age child on January 11, 2017, the date the application was filed, and was an adolescent on the date of the written determination. (Dkt. 19 at 49). At step one, the ALJ determined that N.N. had not engaged in substantial gainful activity since November January 11, 2017, the application date. (*Id*.).

At step two, the ALJ found that N.N. suffered from the severe impairments of: specific learning disorder; attention deficit hyperactivity disorder ("ADHD"), mixed type;

mild delay in receptive language; mild delay in expressive language; past severe delay in speech; and stool withholding. (*Id.*).

At step three, the ALJ found that N.N. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). Similarly, the ALJ found that N.N. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id.* at 49-50). In making this determination, the ALJ considered N.N.'s functioning in each of the above-mentioned six domains and concluded that N.N. had a marked limitation in the area of acquiring and using information, and less than marked limitations in attending and completing tasks, interacting and relating with others, caring for himself, and health and physical well-being. (*Id.* at 53-59). The ALJ further found that N.N. had no limitation in moving about and manipulating objects. (*Id.* at 57). Accordingly, the ALJ found that N.N. was not disabled as defined in the Act. (*Id.* at 59).

## II. Remand for Further Administrative Proceedings is Required

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner for further proceedings, arguing that: (1) the ALJ erred in concluding that N.N. did not have marked limitations in two of the six domains of functioning; (2) the ALJ erred in purporting to give significant weight to the opinion of consultative speech pathologist Marydel Wypcy, but failing to incorporate portions of that opinion regarding interacting and relating with others; (3) the ALJ erred in his assessment of fifth grade teacher Lisa Thompson's evaluation and the school psychologist's report on which it relied; (4) the ALJ erred by purporting to give significant weight to fifth grade teacher Lisa

Thompson's evaluation but failing to incorporate portions thereof into his assessment of multiple domains of functioning; and (5) the ALJ failed to analyze multiple domains in sufficient detail to allow for meaningful judicial review. (Dkt. 22-1 at 3). For the reasons set forth below, the Court agrees with Plaintiff that the ALJ's assessment of the domain of caring for oneself was insufficient to allow for meaningful judicial review and that remand is accordingly required.

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019). Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record . . . the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions." *Id*. (internal quotations and citation omitted). In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.,* No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted). This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations

in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id*.

Here, as Plaintiff points out, the evidence of record demonstrates that N.N.'s severe impairments cause him to have bowel movements in his pants, including sometimes while at school. (*See* Dkt. 19 at 328, 424, 431-32). While this problem ebbed and flowed in terms of frequency during the relevant time period, at the time of the hearing in this matter N.N. was having bowel movements in his pants "at least once a day or every other day." (*Id*. at 79).

In his decision, the ALJ briefly mentioned N.N.'s toileting problems in his consideration of N.N.'s health and physical well-being, observing that they had previously improved but had recurred in late 2018 and early 2019. (*Id*. at 59). However, the ALJ made no mention of N.N.'s toileting problems whatsoever in his assessment of N.N.'s ability to care for himself. Instead, the ALJ's assessment of N.N.'s ability to care for himself consisted, in its entirety, of the following two sentences:

> [N.N.] was noted to need assistance with activities such as cleaning his room, but in recent records was noted to be active in advocating for greater independence. The consultative examination noted an ability to vacuum, do dishes, and dress and groom himself.

(*Id*. at 58 (internal citations omitted)).

"[I]n reviewing an administrative agency's decision, a court should not be compelled to guess at the theory underlying the agency's action." *Berry v. Schweiker*, 675 F.2d 464, 469 n. 3 (2d Cir. 1982) (quotation omitted). Further, "[w]hile the Court should not engage in weighing the credibility of evidence or review the underlying matter *de novo*, the Court is required to ensure that the ALJ has satisfied his legal duty." *Bradley o/b/o*

*Y.T.B. v. Berryhill*, 305 F. Supp. 3d 460, 464 (W.D.N.Y. 2018) (remanding for further administrative proceedings due to "the ALJ's largely-unexplained determination that [the minor child] had less than marked limitations with respect to acquiring and using information"). Accordingly, where an ALJ engages in only a cursory discussion of the domains of function and there is "conflicting evidence in the record which is not discussed in the ALJ's decision, it is impossible for [the] Court to assess whether proper legal standards were applied, and to find that the ALJ's conclusions are supported by substantial evidence." *Dunaway ex rel. E.B.B. v. Astrue*, 815 F. Supp. 2d 624, 629 (W.D.N.Y. 2011); *see also Agee ex rel. M.P.W. v. Astrue*, No. 12-CV-0657, 2013 WL 6384595, at *10 (W.D.N.Y. Dec. 6, 2013) ("Here, the ALJ's decision has left the Court with no guidance as to how the ALJ decided on a less than marked limitation. The entirety of the analysis of this domain consists of one underlined conclusory sentence, followed by three very short paragraphs."), *adopted,* 2014 WL 61407 (W.D.N.Y. Jan. 8, 2014).

In this case, the ALJ's cursory discussion of N.N.'s ability to care for himself, including particularly the ALJ's failure to even mention N.N.'s well-documented toileting difficulties in analyzing this domain, renders the Court unable to meaningfully review the ALJ's analysis or to determine whether it is supported by substantial evidence. As the ALJ himself acknowledged, "[s]ome examples of difficulty children could have in caring for themselves are . . . does not feed, dress, toilet, or bathe self age-appropriately." (Dkt. 19 at 58 (emphasis added)); *see also* Social Security Ruling ("SSR") 09-7P (S.S.A. Feb. 17, 2009) ("The domain of 'Caring for yourself' involves the emotional ability to engage in self-care activities, such as feeding, dressing, toileting, and maintaining hygiene and

physical health." (emphasis added)). As explained above, the record before the ALJ supported the conclusion that N.N. was soiling himself on a daily or near-daily basis at the time of the hearing. By failing to address this issue in considering N.N.'s ability to care for himself, the ALJ left the Court unable to find that his assessment is supported by substantial evidence.

The Commissioner's arguments to the contrary are unavailing. First, the Commissioner contends that "Plaintiff is essentially arguing the ALJ should have weighed the evidence in a manner more favorable to Plaintiff." (Dkt. 23-1 at 15). This is incorrect. The problem is not the weight the ALJ gave this evidence—as explained above, the problem is that the record is devoid of any indication of what that weight was or the ALJ's reasoning for assigning such weight.

Second, the Commissioner argues that "N.N.'s stool withholding improved with behavior modification" and that "a remediable impairment is not disabling." (*Id*. at 16). This argument fails for multiple reasons. Initially, the record does not compel the conclusion that N.N.'s stool withholding was actually remediable. While the record does show sporadic improvements in N.N.'s ability to toilet appropriately, it also shows that his stool withholding continued to recur even after behavior modification was implemented.

Further, nowhere in his decision did the ALJ suggest that he viewed N.N.'s stool withholding as having been remediated. To the contrary, he identified it as a severe impairment and expressly noted the recurrence in 2018 and 2019. The Court cannot affirm the ALJ's decision based on "a *post hoc* rationalization that is not apparent from the face of the ALJ's decision." *Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014); *see also*

*Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept . . . counsel's *post hoc* rationalizations for agency action." (quotation omitted)).

For all these reasons, the Court cannot find that the ALJ's decision was supported by substantial evidence. However, the Court rejects Plaintiff's contention that it should find N.N. disabled as a matter of law and remand solely for calculation and payment of benefits. (*See* Dkt. 22-1 at 30 ("[T]his Court can and should reverse and remand the Commissioner's decision for the immediate calculation of benefits, as N.N. has marked limitations in at least two domains of functioning.")). Having reviewed the record and the other arguments made by Plaintiff, the Court finds that "[t]his is not a case where the evidence of record so clearly demonstrates that the claimant had a marked or extreme limitation in this domain (or any other) such that remand would serve no useful purpose." *Bradley*, 305 F. Supp. 3d at 463. On remand, the ALJ shall revisit all the domains of functioning and render a new determination in which he "justif[ies] any determination that [N.N.'s] impairments do not entitle him to benefits, with sufficient specificity to permit meaningful review." *Id*.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 22) is granted to the extent that the matter is remanded for further administrative proceedings. The Commissioner's motion for judgment on the pleadings (Dkt. 23) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 22, 2022
       Rochester, New York